FILED
United States Court of Appeals
Tenth Circuit

February 1, 2008

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES SCOTT SALI,

Defendant-Appellant.

No. 07-8022

(D.C. No. 06-CR-84-ABJ )
(D. Wyoming)

---

ORDER AND JUDGMENT[*]

---

Before **BRISCOE, EBEL,** and **McCONNELL**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore,

submitted without oral argument.

Defendant James Sali pled guilty to four drug trafficking-related offenses and was

sentenced to a term of imprisonment of sixty years. On appeal, Sali's counsel has filed an

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Anders brief and a motion to withdraw as counsel. See Anders v. California, 386 U.S. 738, 744 (1967). Both Sali, appearing pro se, and the government have filed responses to the Anders brief. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we grant counsel's motion to withdraw and dismiss the appeal.

I.

Between August 2005 and January 2006, Sali was involved in a conspiracy to distribute methamphetamine in Cheyenne, Wyoming. During that time period, Sali made numerous trips to Commerce City, Colorado, to obtain methamphetamine. On many of those occasions, as well as in connection with his other drug-trafficking activities, Sali carried a short-barreled shotgun. During the period of the conspiracy, Sali assisted in distributing between five and fifteen kilograms of methamphetamine.

Sali was arrested on January 20, 2006, and he and several of his co-conspirators were subsequently indicted by a federal grand jury on numerous drug-trafficking and firearms charges. On June 23, 2006, Sali's counsel filed a motion asking the district court to order a mental and physical evaluation of Sali for purposes of determining his competency to be tried, as well as his "physical and mental competence at the time of commission of the charged offense[s]." ROA, Vol. 1, Doc. 259 at 1. The district court granted that motion on June 27, 2006, and Sali was subsequently transferred to the United States Medical Center for Federal Prisoners (USMCFP) in Springfield, Missouri, for evaluation.

On or about October 23, 2006, a clinical psychologist at USMCFP submitted to the

district court a report concluding that Sali was competent to stand trial.  More specifically, the psychologist concluded that, although Sali suffered from a major depressive disorder as well as a significant personality disorder, he retained the ability to understand the nature and potential consequences of the charges against him and to assist in his defense.  The psychologist also noted there was evidence that Sali had attempted to significantly exaggerate the nature of his psychological symptoms.  The district court conducted a competency hearing on November 27, 2006, during which Sali stipulated to the psychologist's findings and conclusions.  Based thereupon, the district court found Sali "competent to proceed to trial and to make other decisions with regard to his legal case."  ROA, Vol. 5 at 4.

On December 27, 2006, the district court conducted a hearing to entertain various pretrial motions.  During that hearing, Sali's counsel stated that Sali "want[ed] to have an examination by a professional . . . to evaluate his heavy [drug] usage" for purposes of developing a "diminished capacity" defense.  Id., Vol. 6 at 108.  In connection with that request, Sali's counsel also asked the district court for a thirty-day continuance of the trial setting.  Id. at 109.  The district court, in response, expressed reluctance to continue the trial, noting that Sali's requests were "coming at the eleventh hour, the 59th minute," and that "numerous Government witnesses at great expense [we]re being kept [nearby] for purposes of th[e] . . . trial."  Id. at 111.  The district court did, however, note that Sali's counsel could make arrangements "under the Criminal Justice Act provisions . . . for a psychologist [or] psychiatrist to pop in and see . . . Sali and visit with him" prior to trial.

3

Id. The district court also, in response to a government motion, ruled admissible a videotaped confession made by Sali to authorities following his competency evaluation. Id. at 115-17.

On January 3, 2007, the first day of his scheduled trial, Sali agreed to plead guilty to four of the twenty-two counts against him in exchange for a stipulated sentence of sixty years and the government's dismissal of the remaining charges against him. At a change of plea hearing conducted that same day, the district court conducted a plea colloquy during which it advised and questioned Sali about specific issues. The colloquy included the following exchanges:

> THE COURT: Are you presently being treated with drugs, alcohol, pills or medications?
>
> THE DEFENDANT: I take medication, yes.
>
> THE COURT: And those medications are used for depression primarily?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Anything about those medications that would prevent you from proceeding here today in this matter?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: You feel alert and able to proceed?
>
> THE DEFENDANT: Yes.
>
> * * *
>
> THE COURT: Are you being treated presently by a doctor, hospital or psychiatrist?

THE DEFENDANT: No, sir.

THE COURT: Other than the depressive condition that was noted in the psychological and psychiatric workup in your case, anything else?

THE DEFENDANT: No, sir.

Id., Vol. 3 at 7-8.

THE COURT: I have before me the plea agreement. Did you sign this plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Was your signature obtained voluntarily of your own free will?

THE DEFENDANT: Yes.

THE COURT: Was there any threat, coercion against you to cause you to sign this?

THE DEFENDANT: Nothing other than facing maximum.

THE COURT: The sentence you were facing?

THE DEFENDANT: (Nods head.)

THE COURT: Essentially you're making the best choice you can, given the circumstances you're facing?

THE DEFENDANT: Yes, sir.

Id. at 8-9.

THE COURT: Will your pleas be made voluntarily of your own free will?

THE DEFENDANT: Yes, sir.

THE COURT: And will you be pleading guilty because you are, in fact, guilty of those crimes?

5

THE DEFENDANT: Yes, sir.

Id. at 13. At the conclusion of the change of plea hearing, the district court made the following relevant findings:

> It appears to me that you're competent when entering these pleas. And I point to the records that have been forwarded to this Court from – in addition to everything else I have observed here in open court to the report I've received from Springfield. You're represented by able and competent and experienced counsel, the pleas appear to be voluntarily made without force, coercion or violence or improper promises, special leniency, favor or benefit, made voluntarily with knowledge of the direct consequences of the pleas in this case. By that I mean discussed various sentencing options, we fully discussed the 11(c)(1)(C) provisions of the plea agreement in this case.

Id. at 36.

On March 15, 2007, the district court, in accordance with the plea agreement, sentenced Sali to a term of imprisonment of sixty years. On March 20, 2007, Sali filed a pro se notice of appeal.

II.

Under Anders, defense counsel may "request permission to withdraw where counsel conscientiously examines a case and determines that any appeal would be wholly frivolous." United States v. Calderon, 428 F.3d 928, 930 (10th Cir. 2005). In such a case, "counsel must submit a brief to the client and the appellate court indicating any potential appealable issues based on the record." Id. The client is then permitted to submit arguments to the court in response. The court must then fully examine the record "to determine whether defendant's claims are wholly frivolous." Id. If so, the court may dismiss the appeal.

6

Here, Sali's counsel argues in his <u>Anders</u> brief that Sali's guilty "pleas were not knowingly and voluntarily made" and the district court erred in accepting them. Aplt. Br. at 11. More specifically, Sali's counsel argues that the district "court had been put on notice that . . . Sali was suffering from a diminished capacity due to his drug addiction," and had even authorized Sali on December 27, 2006, "to explore this contention by" hiring "an expert drug counselor or psychiatrist." Id. at 13. "However," Sali's counsel complains, "only days later, the [district] court allowed . . . Sali to plead guilty without having addressed . . . Sali's drug addiction in the Rule 11 colloquy." <u>Id.</u>

Sali, in his pro se response to the <u>Anders</u> brief, essentially echoes his counsel's arguments. In particular, Sali asserts that he "was on medication at the time of the plea and . . . was withdrawing from years of drug abuse that" affected his "ability to knowingly and intelligently enter into a contract with the government . . . ." Aplt. Supp. Br. at 2. Sali also complains that the district court, despite having authorized Sali to retain an expert to assist him in exploring a diminished capacity defense, "failed to address" at the change of plea hearing why Sali had decided not to pursue this possible defense. <u>Id.</u>

Because Sali did not assert any Rule 11 error during his sentencing, nor subsequently move to withdraw his guilty plea, we review any challenges to the Rule 11 hearing for plain error. <u>United States v. Cano-Varela</u>, 497 F.3d 1122, 1131 (10th Cir. 2007). "To show Rule 11 plain error, a defendant must show (1) error that (2) is plain which (3) affected his 'substantial rights' and (4) 'seriously affected the fairness, integrity

7

or public reputation of judicial proceedings.'" Id.

Having carefully examined the record on appeal, we conclude that the district court did not commit any error, let alone plain error, in accepting Sali's guilty pleas. Sali's own written assertions, set forth in the written plea agreement with the government[1], as well as his own verbal assertions, made to the district court during the change of plea hearing, confirm the district court's express finding that his pleas were knowingly and voluntarily made. Contrary to the assertions he and his counsel now make on appeal, Sali stated to the district court at the change of plea hearing, under oath, that he was feeling alert, was proceeding voluntarily of his own free will, and was attempting to make the best strategic choice given the charges and evidence against him (including, as noted, his own videotaped confession). These statements, in our view, obviated any need for the district court to, as now asserted by Sali and his counsel, have explored in more depth the nature and extent of Sali's drug addiction or his reasons for deciding to forego a potential diminished capacity defense.

---

[1] In the written plea agreement, Sali "acknowledge[d] that he ha[d] read the Second Superseding Indictment setting forth the . . . charges against him" and "that the charges ha[d] been fully and carefully explained to him by his attorney, and that he fully underst[ood] both the nature and elements of the crimes with which he ha[d] been charged and the maximum and minimum penalties to which he could be subjected in the event he [wa]s ultimately convicted on said charges." ROA, Vol. 2, Doc. 537 at 5. Sali also "agree[d] that he [wa]s pleading guilty because he [wa]s, in fact, guilty . . . ." Id.

Counsel's motion to withdraw is GRANTED and the appeal is DISMISSED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge